UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MARIA OJEDA-FRAGOZO,<br><br>           Defendant-Petitioner,<br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>           Respondent. | CASE NO. 09-CR-2914 W<br>             10-CV-1610 W<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [DOC. 26]** |

On July 30, 2010, Petitioner Jose Maria Ojeda-Fragozo, a federal prisoner proceeding *pro se*, commenced this habeas corpus proceeding pursuant to 28 U.S.C. § 2255. Respondent United States of America opposes. The Court decides the matter on the papers submitted and without oral argument. See Civil L.R. 7.1 (d)(1). For the reasons stated below, the Court **DENIES** the petition.

I.  BACKGROUND

On June 30, 2009, Petitioner was arrested for the offense of importing approximately 1.36 kilograms of methamphetamine into the United States. On August 19, 2009, pursuant to a plea agreement signed August 15, 2009, Petitioner pled guilty

to a one-count information charging him with importation of 1.36 kilograms of methamphetamine, in violation of 21 U.S.C. §§ 952 and 960.

In the plea agreement, the parties agreed that the Sentencing Guidelines should be computed to result in an adjusted offense level of 24. (*Resp't's Opp'n Ex. A* 8:16 [Doc. 29].) The parties stipulated that the Sentencing Guidelines were only advisory and just one of the factors that the Court would consider under 18 U.S.C. § 3553(a) in imposing a sentence. (*Id.* at 8:4–6.) The parties also agreed that for Petitioner to qualify for the "safety valve" under § 5C1.2 of the Federal Sentencing Guidelines, Petitioner must truthfully disclose to the government all information and evidence he has regarding the offense and relevant conduct. If Petitioner did not qualify for the "safety-valve," he agreed that he may be subject to the statutory mandatory minimum sentence.

During Petitioner's change-of-plea hearing on August 19, 2009, Petitioner acknowledged that everything in the written plea agreement was explained to him in Spanish (*Resp't's Opp'n Ex. B* 4:13–15); he understood everything (*id.* at 4:16–17); he had enough time to talk to his attorney about the agreement and facts of the case (*id.* at 4:18–21); neither he nor anyone near and dear to him had been threatened by anyone (*id.* at 4:22–24); by pleading guilty, Petitioner was giving up his constitutional rights (*id.* at 4:25–5:2); and the maximum punishment for the offense included up to life in prison with a mandatory minimum of ten years in prison, and following release from custody, Petitioner would be on supervised release for five years (*id.* at 5:14–21). Additionally, Petitioner admitted that on June 30, 2009 he entered the United States from the Calexico East and California port of entry while driving a vehicle that he knew contained a controlled substance. (*Id.* at 6:10–25.) He agreed that federal agents found approximately 1.36 kilograms of methamphetamine in his vehicle. (*Id.* at 5:22–6:4.)

On July 30, 2010, Petitioner commenced the present habeas corpus proceedings pursuant to 28 U.S.C. § 2255. On September 22, 2010, Respondent filed an opposition. On October 4, 2010, Petitioner filed a response.

## II. DISCUSSION

Petitioner argues that his sentence should be vacated and corrected because he was denied effective assistance of counsel at his sentencing hearing in violation of the Sixth Amendment.

### A. Petitioner Waived His Right to Collateral Attack and Appeal When He Signed the Plea Agreement.

Petitioner waived his right to collaterally attack his sentence in the Plea Agreement. (*Resp't's Opp'n Ex. A* 11:2–22.) Courts have repeatedly upheld the validity of appeal waivers finding that "public policy strongly supports plea agreements." United States v. Navarro-Botello, 912 F.2d 318, 321 (9th Cir. 1990); see also Brady v. United States, 397 U.S. 742, 752 n.10 (1970); United States v. Wiggins, 905 F.2d 51, 53 (4th Cir. 1990). Courts will enforce a Petitioner's appeal waiver if (1) the waiver is knowingly and voluntarily made; and (2) the waiver, by its terms, waives the right to appeal. United States v. Nunez, 223 F.3d 956, 958 (9th Cir. 2000).

First, a valid waiver requires that the Petitioner agreed to its terms knowingly and voluntarily. See id. A reviewing court looks to the circumstances that surround the plea agreement's signing and entry to determine whether a defendant agreed to its terms knowingly and voluntarily. See United States v. Baramdyka, 95 F.3d 840, 843 (9th Cir. 2000).

In the present case, Petitioner consented to enter into the Plea Agreement with his attorney's advice. (*Resp't's Opp'n Ex. A* 1:19–3:8, 12:20–24.) He represented that his plea was knowing and voluntary. (*Id.* at 6:4–14, 12:20–24.) Petitioner also represented that he was satisfied with his attorney's performance. (*Id.* at 13:2–4.) Thus, the Court concludes that Petitioner knowingly and voluntarily agreed to waive his right to appeal and collaterally attack his sentence.

Second, a valid waiver must also explicitly state that Petitioner is waiving his right to appeal. See Nunez, 223 F.3d at 958. A reviewing court applies contract principles, including the parole evidence rule. See United States v. Ajugwo, 82 F.3d 925, 928 (9th Cir. 1996). Under the parole evidence rule, a court enforces the contract's plain language and does not look to "extrinsic evidence . . . to interpret . . . the terms of an unambiguous written instrument." Wilson Arlington Co. v. Prudential Ins. Co. Of Am., 912 F.2d 366, 370 (9th Cir. 1990).

Here, the Plea Agreement explicitly states:

> In exchange for the Government's concessions in this plea agreement, defendant waives, to the full extent of the law, any right to appeal or to collaterally attack the conviction and sentence, including any restitution order, unless the Court imposes a custodial sentence above the greater of the high end of the guideline range recommended by the Government pursuant to this agreement at the time of sentencing or statutory mandatory minimum term, if applicable. If the custodial sentence is greater than the high end of that range, the defendant may appeal, but the Government will be free to support on appeal the sentence actually imposed. If the defendant believes the Government's recommendation is not in accord with this agreement, defendant will object at the time of sentencing; otherwise the objection will be deemed waived.

(*Resp't's Opp'n Ex. A* 11:3–15.) Thus, Petitioner agreed to waive his right to collaterally attack his sentence so long as the Court did not impose a sentence longer than that for the high end of the offense level recommended by the Government. Because Petitioner's sentence did not exceed the high end of the recommended offense level, the terms of his Plea Agreement bar this collateral attack. Therefore, the Court is prevented from granting the habeas relief requested herein.

### B.   Petitioner's Claim for Ineffective Assistance of Counsel Lacks Merit.

To prevail on an ineffective assistance of counsel claim, Petitioner must prove that the performance of his attorney was grossly deficient, and that Petitioner's defense was prejudiced by his attorney's deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). Petitioner bears the burden of establishing both elements. United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).

Given the "distorting effects of hindsight," in evaluating an ineffective assistance of counsel claim, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Petitioner may establish prejudice only by demonstrating a reasonable probability that but for his attorney's error, the outcome of his trial would have been different. Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

Petitioner's ineffective assistance of counsel claim appears to be based on the contention that his attorney (1) should have argued further for the "safety valve" reduction under the Sentencing Guidelines and (2) misadvised Petitioner regarding the likely consequences of pleading guilty. Respondent argues that the record demonstrates that Petitioner's habeas request suffers from numerous defects—foremost, that Petitioner waived his right to challenge his sentence as discussed above. Respondent also argues that Petitioner's counsel did not render ineffective assistance. The Court agrees with Respondent.

Petitioner's attorney's alleged failure to further argue for the safety-valve reduction does not constitute deficient representation given that Petitioner signed a plea agreement that explicitly precluded him from seeking further relief through that adjustment if Petitioner did not qualify under § 5C1.2:

> If defendant truthfully discloses to the government all information and evidence the defendant has concerning the offense and relevant conduct, and if defendant otherwise qualifies for the "safety valve" in § 5C1.2, the government will recommend a two-level reduction under § 2D1.1(b) (11), and relief from any statutory minimum sentence pursuant to § 5C1.2. Defendant understands that if he does not qualify for § 5C1.2, defendant may be subject to a statutory mandatory minimum sentence.

(Resp't's Opp'n Ex. A 8:20–27.) During Petitioner's sentencing hearing Respondent stipulated for the record that Petitioner participated in two safety-valve sessions, and in both sessions Respondent found Petitioner to be untruthful. (Resp't's Opp'n Ex. D 5:3–12.) Even Petitioner's counsel conceded that "[Petitioner] can not satisfy the

government's request" for the safety-valve reduction. (*Def.'s Sentencing Mem.* 3:27–28, 1:28–2:2 [Doc. 23].) As a result, Respondent then proceeded to recommend the mandatory minimum sentence to the Court asserting all parts of the safety-valve provision as set forth in the plea agreement were not met. (*Id.* at 5:13–15.) Petitioner did not deny these claims. Also, during Petitioner's change-of-plea hearing, Petitioner specifically acknowledged that the plea agreement was explained to him in Spanish and that he understood the terms of the agreement. (*Resp't's Opp'n Ex. B* 4:13–17.) Additionally, there is no dispute that absent the plea agreement, Petitioner faced up to a minimum 120 months imprisonment had he been found guilty at trial. (*Resp't's Opp'n Ex. A* 4:17–19.) Thus, by entering the plea agreement, Petitioner could have received significant benefits but was also informed of the possibility that he may be ineligible for those benefits. For these reasons, the Court finds Petitioner's attorney did not render ineffective assistance by complying with the plea agreement.

Similarly, Petitioner's counsel did not render ineffective assistance by allegedly misadvising Petitioner regarding the likely effect of his guilty plea on the sentence. This claim appears to be based on Petitioner's contention that he was unaware that the guilty plea would result in the long sentence or prison time, and that he "was never expecting [the] sentence of 120 months" that he received." (*Pet'r's Arg. in Supp.* 5 [Doc. 26].) Petitioner's contention is contradicted by the record.

The reporter's transcript of the August 19, 2009 proceedings includes testimony where the Court asked if Petitioner understood "the maximum punishment for this offense is up to life in prison" and that "there is a mandatory minimum of ten years in prison." (*Resp't's Opp'n Ex. B* 5:14–16.) Petitioner responded, "Yes." (*Id.* at 5:21.) Additionally, although the parties agreed to a joint recommendation under the Sentencing Guidelines, the plea agreement clearly notified Petitioner that the Court could sentence him to the minimum mandatory sentence provided by the statute if he did not qualify for the safety-valve reduction pursuant to § 5C1.2—which Petitioner's counsel eventually conceded that Petitioner did not qualify for (*Def.'s Sentencing Mem.*

3:27–28, 1:28–2:2). And Petitioner initialed the plea agreement that he had been advised.

Here, the Plea Agreement explicitly states:

> Defendant understands that the sentence is within the sole discretion of the sentencing judge. The Government has not made and will not make any representation as to what sentence defendant will receive. Defendant understands that the sentencing judge may impose the maximum sentence provided by statute, and is also aware that any estimate of the probable sentence by defense counsel is a prediction, not a promise, and is <u>not binding on the Court</u>.

(*Resp't's Opp'n Ex. A* 7:15–22 (emphasis in original).) These provisions establish that in entering the plea agreement, Petitioner was aware that he could receive the statutory mandatory minimum 120 month sentence. Accordingly, Petitioner's claim for ineffective assistance of counsel lacks merit.

### III.  CONCLUSION AND ORDER

In light of the foregoing, the Court **DENIES** the petition for writ of habeas corpus (Doc. 26). The Clerk of the Court shall close the district court file.

**IT IS SO ORDERED.**

DATED: January 14, 2011

_____
Hon. Thomas J. Whelan
United States District Judge